TUEDT and others *v.* CARSON and others.

*(Circuit Court, D. Minnesota.* 1882.)

1. REMOVAL OF CAUSE.

> The act of 1866, providing for the removal of a part of a cause into the federal court, and thereby splitting the action, was repealed by section 2 of the act of March 3, 1875.

2. SAME—UNDER ACT OF MARCH 3, 1875.

> An action brought by a citizen of the state in which it is brought against citizens of the same state and citizens of another state, cannot be removed from the state court to the federal court by the non-resident defendants, unless the whole suit is removed.

3. SAME—SEVERABLE AND INSEVERABLE CONTROVERSY.

> Although an action brought by the plaintiff against several defendants is for a tort, in respect to which plaintiff could sue one or all of the tort-feasors, yet if he elects to sue all, it will be deemed so far an inseverable controversy that a part only of the defendants cannot remove the cause into the federal court.

TREAT, D. J. This case was instituted in the state court against several non-resident defendants; also Wood and Styles, residents. The action is for malicious prosecution. The cause was removed from the state court to this court at the instance of the non-resident defendants. Without suggestion to the court that this was a removed cause, it went to trial on its merits. It appeared that the non-residents, being merchants, had sold and delivered to the plaintiffs goods amounting to three or four hundred dollars. Having heard a rumor that the plaintiffs had failed, a telegram was sent by them to Wood, of the law firm of Wood & Styles, inquiring as to the truth of said rumor. Wood answered, substantially, that the plaintiffs had not yet failed, but were in a bad way, and requesting said non-resident defendants to send forward the amount of their demand and the individual names of the members of the firm. That was done, together with a direction to secure their demand at all hazards. After information secured by Wood & Styles as to the preparation of an attachment suit in the interest of others, Styles made the needed affidavit for an attachment, upon the strength of which a levy was made. It was contended that such action having been had without previous demand for the amount due, other attachment suits of like nature were induced, whereby the store of the plaintiffs, under the several attachment and other suits following, and executions issued, plaintiffs' property was sacrificed at said execution sales. Judgment was had in the state court, as by default, against the plaintiffs here

for the amount of the demand made by the non-resident defendants in this suit, and execution was issued and levied accordingly; also several executions under other judgments.

The non-resident defendants in this suit gave no direction to their local attorneys as to the manner in which they should proceed, but before final judgment were informed that an attachment suit had been instituted in their name. Of the facts averred in the affidavit made by Styles, they knew nothing. There was no evidence offered to show the connection of the non-residents with the commencement and continuance of said attachment suit other than what is thus stated. At the close of the case the counsel for said non-resident defendants asked the direction of the court as to their liability on the case as made. The court, holding that they were not responsible in this action for what their local attorneys had done without their knowledge or direction, ordered a verdict in favor of said non-resident defendants, and suggested to plaintiffs' counsel to proceed before the jury with their cause of action against said Wood & Styles. The plaintiffs' counsel thereupon moved to remand the cause, which was overruled. A verdict for non-resident defendants was rendered, and the plaintiffs' counsel moved to remand the cause as to the resident defendants, which motion was also overruled. No further action was had, because said resident defendants had not appeared to contest the cause, and the plaintiffs declined to proceed further as to them. At that stage of the case it was suggested by said resident defendants that they were willing to have the case as to them submitted to the jury.

It should also be stated that after judgment had been rendered in the original attachment suit the same was opened on motion, and after said motion was heard the attachment was dismissed, but the judgment for the demand sued for upheld, leaving in force the levy on execution. There were many facts and circumstances developed which made it proper for the jury to decide whether said Wood & Styles acted with malice, and without probable cause.

It will thus be seen that the case is anomalous. In one of its aspects the court should, at the request of Wood & Styles, have submitted the case, as to them unargued, to the jury, under such instructions as the case demanded, inasmuch as plaintiff's counsel declined to proceed further as to them, resting on his motion to remand. In another aspect, it may be urged that as the whole case was before the jury, and a verdict rendered in favor of the non-resident defendants on the submission of the case, and nothing was said in the verdict as

to the other defendants, the verdict, under the circumstances stated, should be held as if for all the defendants. Behind the immediate conduct of the suit and the verdict rendered is the grave question whether this suit was removable to the United States court. The action was *ex delicto,*—a tort,—in respect to which the plaintiffs could sue one or all of the tort-feasors. They chose to sue all, resident and non-resident, in one suit. The non-resident defendants caused the whole suit to be removed, and now contend that as the cause of action was severable as against tort-feasors, the case falls within the recent rulings of the United States supreme court. It has been conceded and has been expressly decided that the act of 1866 is repealed by the act of 1875, so that the whole case must be removed if a removal is had. It therefore becomes necessary to decide whether, under the act of 1875, this case was removable.

The question presented has been suggested to the United States supreme court in several cases, the most recent of which went to that court from this circuit.

In the case of *Barney* v. *Latham,* 103 U. S. 205, no new views were expressed, but an elaborate analysis given of the various acts of congress whereby the conclusion theretofore reached was upheld, viz., that when many parties are named, some of whom are formal, though essential to the record, United States courts are not ousted of their jurisdiction if, under another distribution of the parties to the record, the real controversy is between citizens of different states. That case is only one of many to the same point. The case of *Hyde* v. *Ruble* has since been before the United States supreme court, in which the opinion of this court in remanding said case was sustained. That was a suit by a Minnesota plaintiff on a contract of bailment against copartners, one of whom was a citizen of the same state with plaintiffs, and the other copartners (defendants) citizens of another state. The United States supreme court held that the case was not removable.

How does this suit differ from that in principle?

The act of 1866 in *terms* permitted the unseemly condition of having a suit in a state court split in two as to the respective parties, whereby precisely the same cause of action would be pursued at the same time as to some of the defendants in the state court, and as to others in the United States court. It is evident that the results of the distinct trials in different jurisdictions might differ; and consequently persons equally liable would be in the strange predicament of having no right of contribution, where allowable, when judgment

against some in one jurisdiction was had, and a judgment for the others rendered in another jurisdiction. What judgment should dominate? Why should not the parties in whose favor a judgment had been secured be protected thereby, and why should the others who had been mulcted by a different judgment be stripped of their legal right to contribution by a decision of a court in which they had ceased to be parties? Without pursuing the inquiry into the strange conditions in which parties might be involved under the act of 1866, it must suffice that in some of the federal courts strong dissenting opinions were originally given when said act was so construed as to permit such anomalous results, and as to the constitutionality of such act, if such was the legitimate construction of its terms. It may be that from such and other considerations congress in its wisdom repealed that statute. The mischief to be remedied must be regarded in construing any statute which changes prior laws or enactments. Hence, it is clear that the following language of the act of 1875 ought to receive only one interpretation. That act says, in section 2, that any suit of a civil nature, etc., may be removed from a state to a United States circuit court, (omitting other provisions.) "When, in any suit mentioned in this section, there shall be a controversy which is *wholly* between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants *actually interested* in such controversy may remove said suit to the circuit court of the United States for the proper district."

The plain meaning of the provisions of the act of 1875, thus quoted, is that when all the plaintiffs are residents, for instance, in the state in whose local court suit is brought, and *all* the defendants are non-residents, then *all* the defendants may by uniting cause the suit to be *wholly* removed, or any *one* of the many non-residents may cause the removal of the *whole* case, although his co-defendants do not join in the request. Under such construction of the statute, the whole case, without splitting, would be transferred to the federal court, and no constitutional difficulty arise. While it is the constitutional right of a citizen of one state, other than that of which his adversary is a citizen, to have the controversy decided in a United States court, it is equally the right of citizens of the same state to be heard solely in the state courts. To avoid that difficulty the act of 1866 was passed. But, as it involved greater difficulties;—such as already suggested in this opinion,—congress repealed that act, so that now there can be no so-called splitting of cases. The whole case must be removed, or no removal had. The act of 1875 is quite

explicit. All of the actual parties on the one side or the other must be citizens of different states, in which event one of the non-residents, even if the others on the same side do not join, may cause the whole controversy to be removed. The act of 1875, however, is guarded in its terms, so as to prevent injustice; for it, as it were, emphasizes the clause that either one or more of the plaintiffs or defendants (under the conditions stated) *actually interested* in such controversy *may* remove, etc. Under that provision the federal courts look to the position of the parties to ascertain whether they are *actually interested,* and if not, as in *Barney* v. *Latham,* the jurisdiction of the federal court is not ousted.

In the suit now under consideration an apt illustration occurs. Many persons were sued in the state court, some resident and some non-resident. The non-residents caused a removal. It is true, the plaintiff could have sued any one or more of said defendants, because the action was in its nature severable, yet he chose, as was his right, to pursue all the wrong-doers in one suit. In the progress of this suit it is judicially determined on the merits that no cause of action exists against the non-residents, leaving the case to be further pursued solely between resident plaintiffs and resident defendants. The case thus became split into two parts, to be continued in a forum which had no jurisdiction of the remaining parties if they had originally been the sole parties. There could not be presented a more forcible illustration of the error in holding that the case was removable at all. It is unnecessary to trace the rulings under the act of 1789 and subsequent acts to the present time, to show that the conclusion reached is the only justifiable one.

The case was not removable, and should have been remanded on motion at the outset, without reserving that motion until the case had been tried on its merits. Still it is this duty of this court, when at any stage of the proceedings it ascertains that it has no rightful jurisdiction, to dismiss or remand.

The court is bound to correct its errors when made to appear. It therefore sets aside the verdict entered, overrules its own action on the motions for removal, and orders the whole case remanded to the state court whence it was removed, with costs against the removing parties.

NELSON, D. J., did not sit in case.